IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-cv-61266-RAR

THE ESTATE OF MARCO SELIM LEVY,

      Plaintiff,

vs.

AIG PROPERTY CASUALTY COMPANY,
A Pennsylvania corporation,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

      Defendant, AIG PROPERTY CASUALTY COMPANY ("AIGPCC" or "Defendant"), hereby moves to dismiss Plaintiff's Amended Complaint, and in support thereof states as follows:

**FACTUAL BACKGROUND**

      1.      The Plaintiff's Amended Complaint alleges AIGPCC insured Plaintiff's property located at 3300 Water Oak Street, Fort Lauderdale, FL 33312 with homeowners' policy of insurance bearing Policy Number PCG 0000083394 (hereinafter "Policy") that was in place on or about September 10, 2017, when the above described property was allegedly damaged as the result of Hurricane Irma causing "direct physical loss and resultant/ensuing damages to the Subject Property" *See* D.E. 14, ¶ ¶ 4, 6, and 7.

      2.      Count II of the Plaintiff's Complaint alleges AIGPCC breached the governing Policy because its alleged "failure to timely and promptly pay all amounts due and owing under the Policy[.]" *See* D.E. 14, ¶ 40.  As pled, Count II fails to allege a short and plain statement of the claim showing that the pleader is entitled to relief and lodges only conclusory allegations.

3.      Furthermore, in Count I, the Complaint seeks declaratory relief pursuant to 28 U.S.C. §§ 2201–2202, and Rule 57, Federal Rules of Civil Procedure. *See* D.E. 14, ¶ 20.  Via the incorporation clause and the express Count I allegations, the Plaintiff again alleges that the Policy was in full force in effect when the Plaintiff's alleged loss occurred "on or about September 10, 2017." *See* D.E. 14, Complaint, ¶ ¶ 6 & 13.

4.      However, and significantly, while the Complaint recites a portion of the Hurricane Deductible Endorsement, PCHO-FLHD (06/05), in the Policy, Count I of the Plaintiff's Complaint fails to cite within its four-corners any true ambiguities that require judicial interpretation.  Nevertheless, the Plaintiff asks the Court for three declarations. *See* D.E. 14, ¶ 35(a) – 35(c).

5.      Even if Plaintiff did properly state a claim for declaratory relief (which is not the case), some of the declarations sought from the Court in Count I must be stricken as they include legal conclusions, legal theories, impermissibly seek advisory opinions and include questions outside the realm of any interpretation of the alleged policy issued to the Plaintiff.  *See* D.E. 14, ¶ 35(a) – 35(c).

6.      Importantly, the Plaintiff's Declaratory relief Count is grounded on a flawed logic that unnecessarily complicates the simple principles and unambiguous language of the Policy and AIGPCC's coverage letter, upon which Plaintiff relies in support of its position. *See* D.E. 1, Exhibit 1 and Exhibit 2.

7.      Specifically, by the Plaintiff's own account, "a hurricane, to wit, Hurricane Irma, caused direct physical loss and resultant/ensuing damages to the Subject property," occurring on or about September 10, 2017.  *See* D.E. 14, ¶ 7.

8.      Plaintiff further alleges that AIGPCC "afforded coverage for 'ensuing water damages to the interior of the property and a very minor repair related to the roof,'" quoting AIGPCC's coverage position correspondence.  *See* D.E. 14, ¶ 23, and D.E. 1, Exhibit 2 (hereinafter "coverage position correspondence").

9.      Plaintiff then isolates one of the findings reached by AIGPCC's engineer, which states that "[t]he water intrusion was not the result of elevated wind pressures or impact from wind-borne debris on September 10, 2017." *See* D.E. 14, ¶ 23, and D.E. 1, Exhibit 2.

10.     Based upon this single finding reached by AIGPCC's engineer, Plaintiff incorrectly goes on to state that AIGPCC found that "the ensuing interior water damages were not caused by Hurricane Irma, but instead, by gradual or sudden loss such as wear and tear, structural movement including the resultant cracking of building materials, or faulty inadequate, or defective workmanship or maintenance." *See* D.E. 14, ¶ 25.

11.     The Plaintiff concludes that "the water intrusion was caused neither directly or indirectly by a hurricane loss," and that AIGPCC applied the incorrect deductible since "the ensuing interior water damages were not caused by Hurricane Irma." *See* D.E. 14, ¶ 27.

12.     However, the coverage position correspondence in which Plaintiff is relying and in part, basing its need for declaratory relief states just the opposite with respect to the ensuing damages reported in connection with Plaintiff's claim for damage reportedly occurring on or about September 10, 2017.  Said correspondence specifically states the following:

> Based upon the investigation conducted by AIGPCC, it able [sic] to extend benefits related to ensuing water damages to the interior of the property and a very minor repair related to the roof. **The remainder of damages related to the roof could not be attributed to Hurricane Irma but were consistent with excluded causes of loss as set forth in the JS Held Conditions report**.

*See* D.E. 1, Exhibit 2. (emphasis added).

13.     Accordingly, Plaintiff's reading of AIGPCC's coverage position correspondence clearly misses the mark, and any reasonable construction of the coverage position correspondence demonstrates that AIGPCC found that the ensuing water damages for which coverage was extended (for which a Hurricane deductible was applied) were in fact caused directly or indirectly by Hurricane Irma and "[t]he *remainder* of damages to the roof could not be attributed to Hurricane Irma." *See* D.E. 1, Exhibit 2 (emphasis added).

14.     Importantly, Plaintiff entirely ignores the temporal aspect of the reported ensuing damages – *when* the damage occurred. The covered ensuing damages from the rains attributed to Hurricane Irma are subject to the Hurricane deductible since they occurred during Hurricane Irma even if water damage (i.e. rain) was otherwise the result of "gradual or sudden loss such as wear and tear, structural movement including the resultant cracking of building materials, or faulty, inadequate, or defective workmanship or maintenance" to the roof, so long as the rain entered during Hurricane Irma.  *See* D.E. 14, P 25.

15.     Hurricane Deductible Endorsement, PCHO-FLHD (06/05), in pertinent part,  states the following:

> We will pay only that part of the total of hurricane loss to your **house, contents,** and **other permanent structures** including additional coverages that exceed the hurricane deductible stated on your Declarations Page. This deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by hurricane. Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by hurricane.

> **"**Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service which:

> a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;
> b. Continues for the period of time during which the hurricane conditions exist anywhere in Florida; and

      c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

*See* D.E. 1, Exhibit 1, Endorsement, PCHO-FLHD (06/05).

16.      AIGPCC found that damages related to the roof could not be attributed to Hurricane Irma and were consistent with excluded causes of loss. *See* D.E. 1, Exhibit 2. However, this finding does not in itself insinuate that the interior water damage did not occur during Hurricane Irma. Thus, the damages are subject to the Hurricane deductible based on the clear meaning of the Policy.

17.      Despite Plaintiff's lawsuit being premised on an alleged September 10, 2017 Hurricane Irma loss, its claim being reported as damage from Hurricane Irma, and AIGPCC extending benefits related to ensuing water damages to the interior with respect to the reported loss based on its investigation and representations made by or on behalf of the Plaintiff (almost two (2) years after Hurricane Irma), Plaintiff is now attempting to create "doubt" as to what deductible applies.

18.      However, as outlined above, the Plaintiff fails to properly invoke the equity jurisdiction of this Court by failing to allege any policy language in need of interpretation or some right or status that requires intervention by this Court.

19.      This Count for Declaratory Relief seeks nothing but an advisory opinion and is the improper vehicle for this suit.

20.      The Plaintiff should not expect to be able to assert that the Insured Property was damaged as a result of Hurricane Irma when it suits its purpose to do so and reject it when not to its advantage, i.e. application of the Hurricane deductible.

21.     Accordingly, the Plaintiff has not established the existence of a justiciable controversy cognizable under the Declaratory Judgment Act. The Plaintiff is simultaneously seeking a declaratory judgment to determine his rights under the insurance Policy while claiming that AIGPCC owes them monetary damages due to AIGPCC's alleged breach of contract under the same insurance Policy.  Therefore, even if the Plaintiff properly pled their action for declaratory relief (which has not been done), there is no need for a declaration from the Court on the issues alleged by the Plaintiff. Furthermore, Plaintiff's Complaint makes only conclusory allegations amounting to a formulaic recitation of the elements of breach of contract.

22.     Furthermore, Plaintiff is not entitled to any award of consequential damages for any alleged breach of contract as the Policy controls the coverages and damages afforded and said damages are not provided for under the policy.

23.     Consequently, the Plaintiff's Complaint must be dismissed in its entirety for the reasons stated herein.

24.     Should the Court decline to dismiss this action its entirety, Plaintiff's claim for consequential damages must nevertheless be stricken, as well as the declarations sought from the Court in Count I, as they include legal conclusions, legal theories, impermissibly seek advisory opinions and include questions outside the realm of any interpretation of the alleged policy issued to the Plaintiff.  *See* D.E. 1, ¶ 35(a) – 35(c).

25.     This Motion is brought in good faith and not for purposes of delay

<u>**MEMORANDUM OF LAW**</u>

**I.      <u>Motion to Dismiss Standard.</u>**

In ruling upon this Motion to Dismiss, the Court should accept the allegations of the Complaint as true and view the facts in the light most favorable to Plaintiff.  *E.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).  However, the Court "need not accept … conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party." *Response Oncology, Inc. v. Metrahealth Ins. Co*., 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) (citation omitted). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  Furthermore, a federal court must follow state law in resolving substantive issues and federal law in resolving procedural issues presented in a diversity case, such as the instant suit.  *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

**II.     <u>The Plaintiff Has Failed to State a Cause of Action for Declaratory Judgment.</u>**

*A.      The Plaintiff Has Failed to Properly Allege an Action for Declaratory Judgment.*

The only relevant inquiry with regard to an action for Declaratory Relief is whether or not a plaintiff is entitled to a declaration of rights. *Govt. Employee Ins. v. Anta*, 379 So. 2d 1038 (Fla. 3d DCA 1980) (citing *Mills v. Ball*, 344 So. 2d 635, 638 (Fla. 1st DCA 1977)); *see also Hildebrandt v. Dept. of Natural Resources, Div. of Interior Resources*, 313 So. 2d 73 (Fla. 3d DCA 1975); *State Farm Mut. Auto. Ins. Co. v. Wallace*, 209 So. 2d 719 (Fla. 2d DCA 1968). In order to obtain jurisdiction under the Declaratory Judgment Act, the moving party must show that it is in doubt as to the existence of some right or status and is entitled to have that doubt

removed. *See Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981).

Here, the Plaintiff's Complaint has failed to meet this basic pleading requirement. While the Complaint recites a portion of the Hurricane Deductible Endorsement, PCHO-FLHD (06/05), in the Policy, Count I of the Plaintiff's Complaint fails to cite within its four-corners any true ambiguities that require judicial interpretation contains an ambiguity that presents a need for a declaration by the Court. The Declaratory Judgment Act is not to be used as a tool to advise attorneys as to the proper path to pursue, nor is the Act to be employed for determination of purely factual issues under an instrument that is clear and unambiguous and presents no need for construction. *See id.*

Rather than alleging any kind of ambiguity as it pertains to the Policy, the Plaintiff is asking the Court for an advisory opinion as to AIGPCC's position regarding coverage and effectively requests that the Court determine purely factual issues under an instrument that is clear and unambiguous and presents no need for construction, which is wholly improper. "To ascertain the meaning of policy text, courts should read the whole policy and attempt to give every provision the full meaning and import of its words." *Lenhart v. Federated Nat'l Ins. Co.*, 950 So. 2d 454, 457-58 (Fla. 4th DCA 2007); *see Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979) (noting that every provision in a contract should be given meaning and effect, with apparent inconsistencies reconciled if possible).

Florida law is clear that a Motion to Dismiss must be granted where a Complaint does not set forth facts showing an actual or justiciable controversy presently existing between the parties. *McCarty v. Florida State Road Dept.*, 211 So. 2d 226 (Fla. 1st DCA 1968). Declaratory relief is not generally available to settle coverage questions under an insurance contract and is an improper remedy when there is no doubt as to the existence or meaning of an insurance contract

provision. *See Travelers Indemnity Co. v. Johnson*, 201 So. 2d 705, 706 (Fla. 1967); *New Amsterdam Cas. Co. v. Intercity Supply Corp.*, 212 So. 2d 110,112 -113 (Fla. 4th DCA 1968); *Travelers Ins. Co. v. Emery*, 579 So. 2d 798, 801 (Fla. 1st DCA 1991).

The Plaintiff has not established it is entitled to a declaration of rights. Although Plaintiff states it is in "doubt" as to its rights under the Policy, it has not set forth any ambiguity in the terms of the Policy that requires construction. The Plaintiff has not established it is entitled to a declaration of rights. Count I of the Plaintiff's Complaint is simply an impermissible disguised alleged breach of contract claim and must be dismissed. *See Kelner*, 399 So. 2d at 37-8 (holding dismissal of complaint for declaratory judgment proper where there is no doubt as to the meaning of the contract, aside from conclusory allegations); *Swain v. Reliable Ins. Co.*, 200 So. 2d 862, 863 (Fla. 3d DCA 1967) (same). Importantly, "a single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders." *Certain Interested Underwriters at Lloyd's London v. Pitu, Inc.*, 95 So. 3d 290, 292 (Fla. 3d DCA 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Mashburn*, 15 So. 3d 701, 704 (Fla. 1st DCA 2009)) (internal quotations omitted).

While it appears Plaintiff is suggesting that AIGPCC is attempting to force a deductible to apply to non-covered losses, Plaintiff, by its own account, is also alleging "a hurricane, to wit, Hurricane Irma, caused direct physical loss and resultant/ensuing damages to the Subject property," occurring on or about September 10, 2017. *See* D.E. 14, ¶ 7. The Plaintiff then asks the Court to find that AIGPCC applied the incorrect deductible since "the ensuing interior water damages were not caused by Hurricane Irma," despite being reported and alleged by Plaintiff as such, and similarly determined to be the case by AIGPCC based upon its investigation. *See*

9

D.E. 14, ¶ 7-9 and D.E. 1, Exhibit 2.

Notwithstanding the fact Plaintiff's lawsuit being premised on an alleged September 10, 2017 Hurricane Irma loss, that its claim was reported as damage from Hurricane Irma, and the fact that AIGPCC extending benefits related to ensuing water damages to the interior with respect to the reported Hurricane Irma loss based on its investigation and representations made by or on behalf of the Plaintiff (almost two (2) years after Hurricane Irma), Plaintiff is now attempting to create "doubt" as to what deductible applies under an instrument that is clear and unambiguous and presents no need for construction.

The coverage position correspondence in which Plaintiff is relying and in part, basing its need for declaratory relief states just the opposite with respect to the ensuing damages reported in connection with Plaintiff's claim for damage reportedly occurring on or about September 10, 2017.  Said correspondence specifically states the following:

> Based upon the investigation conducted by AIGPCC, it able [sic] to extend benefits related to ensuing water damages to the interior of the property and a very minor repair related to the roof. **The remainder of damages related to the roof could not be attributed to Hurricane Irma but were consistent with excluded causes of loss as set forth in the JS Held Conditions report**.

See D.E. 1, Exhibit 2. (emphasis added).

Accordingly, Plaintiff's reading of AIGPCC's coverage position correspondence clearly misses the mark, and any reasonable construction of the coverage position correspondence demonstrates that AIGPCC found that the ensuing water damages for which coverage was extended (for which a Hurricane deductible was applied) were in fact caused directly or indirectly by Hurricane Irma and "[t]he *remainder* of damages to the roof could not be attributed to Hurricane Irma." *See* D.E. 1, Exhibit 2 (emphasis added).

Importantly, Plaintiff entirely ignores the temporal aspect of the reported ensuing damages – *when* the damage occurred. The covered ensuing damages from the rains attributed to Hurricane Irma are subject to the Hurricane deductible since they occurred during Hurricane Irma even if water damage (i.e. rain) was otherwise the result of "gradual or sudden loss such as wear and tear, structural movement including the resultant cracking of building materials, or faulty, inadequate, or defective workmanship or maintenance" to the roof, so long as the rain entered during Hurricane Irma.  *See* D.E. 14, ¶ 25.

Hurricane Deductible Endorsement, PCHO-FLHD (06/05), in pertinent part,  states the following:

> We will pay only that part of the total of hurricane loss to your **house, contents,** and **other permanent structures** including additional coverages that exceed the hurricane deductible stated on your Declarations Page. This deductible applies in the event of direct physical loss to property covered under this policy caused directly or indirectly by hurricane. Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by hurricane.
>
> **"**Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service which:
>
> a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;
> b. Continues for the period of time during which the hurricane conditions exist anywhere in Florida; and
> c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

*See* D.E. 1, Exhibit 1, Endorsement, PCHO-FLHD (06/05).

AIGPCC found that damages related to the roof could not be attributed to Hurricane Irma and were consistent with excluded causes of loss.  *See* D.E. 1, Exhibit 2. However,  this finding does not in itself insinuate that the interior water damage did not occur during Hurricane Irma.

11

Thus, the damages are subject to the Hurricane deductible based on the clear meaning of the Policy.

The Plaintiff should not expect to be able to assert that the Insured Property was damaged as a result of Hurricane Irma when it suits its purpose to do so and reject it when not to its advantage, i.e. application of the Hurricane deductible.

A declaration from the Court stating that Plaintiff is entitled to the relief sought in Plaintiff's count for Declaratory Relief would essentially amount to a ruling in favor of Plaintiff in Count II, his breach of contract claim, and assuming *arguendo*, such relief is appropriate, it will be afforded through litigation of the breach of contract claim, which would render the claim for declaratory judgement moot or simply duplicative. *See Bleau Fontaine Condo. Assoc. No. Three, Inc. v. Indian Harbor Ins. Co.*, No. 18-22995-Civ-Scola, 2019 WL 1932785, at *2–3 (S.D. Fla. Jan. 10, 2019) (dismissing declaratory judgment claim as duplicative of breach-of-contract claim); *Bencomo Enters. v. United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1405–07 (S.D. Fla. 2018) (same); *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *1 (S.D. Fla. Apr. 5, 2017) (same); *Espadon Group, Inc. v. AIGPCC Ins*. Co., 2017 WL 5644602 (S.D. Fla. Mar. 1, 2017) (dismissing a declaratory judgment claim noting that the plaintiff had failed to identify the allegedly disputed terms of the contract and that the real dispute was a factual once concerning the valuation of a loss under the insurance policy).

**B.   *The declarations requested in Paragraphs 35(a) – (c) must be stricken.***

The Plaintiff has made no nexus between these requests for declarations and any claimed doubt or status related to the policy as required to establish entitlement for declaratory relief. *See Johnson*, 201 So. 2d at 706.  Rather, Plaintiff is seeking impermissible advisory opinions and legal advice from the Court related to contract law. *See Chiles*, 680 So. 2d at 404; *see also Trianon*

*Condo. Ass'n v. QBE Ins. Corp.*, 741 F. Supp. 2d 1327, 1331 (S.D. Fla. 2010) (holding motion to dismiss must be granted where complaint shows on its face that plaintiff is seeking an advisory opinion).  Thus, these requests must be stricken.   *See* D.E. 1, ¶ 35 (a) -(c).  Here, the Plaintiff is not claiming an alleged ambiguity or asking for interpretation related to same.  Again, the Plaintiff impermissibly seeks legal advice and an advisory opinion from the Court that is prohibited based upon the above-cited jurisprudence.

**II.**   **Count II of Plaintiff's Complaint for Breach of Contract is Inconsistent with Count I seeking Declaratory Relief.**

The Plaintiff's position in Count I is at odds with the contention that it is in doubt as to its rights under the applicable policy if it alleges AIGPCC breached the very contract, it is requesting the Court to construe (without any specificity) in Count I. The Plaintiff is either in doubt as to its rights under the Policy or it is not.  The Plaintiff unequivocally alleges in the Complaint that it performed all obligations under the policy and that AIGPCC's alleged failure to adequately pay for the loss resulted in breach of the governing Policy. *See* D. E. 14, Complaint, ¶¶ 18 & 38.   The Plaintiff cannot seek declaratory judgment from the Court and simultaneously allege that AIGPCC breached the Policy based on failure to adequately pay the Plaintiff's claim.  In this case, where the Plaintiff has pled two inconsistent counts and rendered contradictory allegations, it is AIGPCC who needs guidance as to how to answer such a Complaint.

When viewed in its entirety, the Complaint is unclear as to what the Plaintiff is requesting from this Honorable Court and from AIGPCC. The Plaintiff's Complaint seeks inconsistent remedies and fails to meet basic pleading requirements; therefore, it must be dismissed in its entirety as it is confusing as to what relief the Plaintiff is seeking.

**III.** **Count II Must be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a).**

In addition to the grounds warranting dismissal of the action as set forth above, Count II must also be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the Plaintiff's Complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. In addition, the Complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

Plaintiff's Complaint makes only conclusory allegations amounting to a formulaic recitation of the elements of breach of contract. Among other deficiencies, Plaintiff fails to allege what particular harm befell the property, what caused this harm, how this harm constituted a "covered loss" under the Policy, and how AIGPCC "failed and/or refused to honor the contractual coverage." *See* D.E. 14, ¶¶ 38. Plaintiff's vague allegations fall short of the factual content needed to establish a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

14

**IV.**    **Plaintiff's Complaint Must be Dismissed because its Claim for Consequential Damages  are not covered by the Policy**

Plaintiff's claim for consequential damages are not provided for under the Policy, and therefore Plaintiff's Complaint fails to state a cause of action and must be dismissed.  In the instant case, Plaintiff seeks consequential in its prayer for relief.  *See* D.E. 14,  WHEREFORE.  In Florida, consequential damages are not ordinarily available in a breach of contract action.  *Travelers Ins. Co. v. Wells*, 633 So. 2d 457, 461 (Fla. 5th DCA 1993).  Normally, the measure of damages for a breach of contract action is limited to the stated policy benefit.  *Travelers Ins. Co.*, 633 So. 2d at 461.  Consequential damages are the exception to this general rule and must be sufficiently proved. *Id.*  They are considered special damages and must be pled with specificity.  *Hardwick Props. v. Newbern*, 711 So. 2d 35, 40 (Fla. 1st DCA 1998).

Plaintiffs is not entitled to any award of consequential damages for any alleged breach of contract as the Policy controls the coverages and damages afforded.  In addition, potentially awarding consequential damages to the Plaintiff would go beyond the scope of recovery the Courts have generally afforded breach of contract actions. Moreover, Plaintiff has failed to plead a claim for consequential damages with any specificity whatsoever, and therefore their claim for consequential damages is improper.  Thus, should the Court decline to dismiss this action its entirety, Plaintiff's claim for consequential damages must nevertheless be stricken.

**CONCLUSION**

The Plaintiff's Complaint must be dismissed entirely due to the reasons stated herein.  Specifically, Count I fails to state a cause of action for declaratory relief because the Plaintiff has failed to properly allege an action for declaratory judgment. Furthermore, The Plaintiff's position in Count II is at odds with the content that it is in doubt as to its rights under the applicable policy if it alleges AIGPCC breached the very contract, they are requesting the Court

15

to construe in Count I.  Count I also fails to comply with Federal Rule of Civil Procedure 8(a), and Count I seeks an impermissible advisory opinion from the Court. Furthermore, some of the declarations sought from the Court in Count I must be stricken as they include legal conclusions, legal theories, impermissibly seek advisory opinions and include questions outside the realm of any interpretation of the alleged policy issued to the Plaintiff.  Finally, Plaintiff's claim for consequential damages are not provided for under the Policy, and therefore Plaintiff's Complaint fails to state a cause of action. Therefore, for the foregoing reasons, Plaintiff's Complaint must be dismissed.

WHEREFORE, Defendant, AIGPCC respectfully requests that this Court grant dismissal of the Plaintiff's Complaint due to the reasons stated herein.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on the 8th day of September 2020, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF.

**The Teebagy & Medeiros Law Group, PLLC**
P.O. Box 221647
West Palm Beach, FL 33422
(561) 229-0280 Telephone
(561) 229-0281 Facsimile
Service Email:  eservice@thetmlaw.com
Counsel for Defendant

By: ___ */s/ Steven C. Teebagy* _____
Steven C. Teebagy, Esquire
Non-Service Email:  steebagy@thetmlaw.com
Florida Bar No.:  64823

16

## <u>SERVICE LIST</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20-cv-61266-RAR

Michael A. Cassel, Esquire
Cassel & Cassel, P.A.
4000 Hollywood Blvd., Suite 685-S
Hollywood, FL 33021
Telephone No. (954) 589-5504
Facsimile No. (954) 900-1768
Email: mcassel@cassel.law; kim@cassel.law; and
pleadings@cassel.law
***Attorneys for Plaintiff***

17